Pedro **BERRIOS**, Plaintiff, Appellant,

v.

**DEPARTMENT OF the ARMY**, et al., Defendants, Appellees.

No. 88–2103.

United States Court of Appeals, First Circuit.

Heard March 2, 1989.

Decided Aug. 29, 1989.

---

Samuel C. Vazquez–Matias with whom Pedro Berrios, pro se., was on brief for plaintiff, appellant.

Isabel Munoz Acosta, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., was on brief for defendants, appellees.

Before TORRUELLA and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

CAFFREY, Senior District Judge.

Pedro Berrios appeals from the district court's ruling dismissing his Complaint against the Department of the Army ("the Department"), two of his former supervisors, and other named defendants.[1] The district court allowed defendants' motion to dismiss on the grounds that plaintiff's federal constitutional claims can be maintained only in strict accordance with the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified in various sections of 5 U.S.C.) ("CSRA" or "Act"), and that his defamation claims against the supervisors are barred by the doctrine of

absolute immunity. We conclude that the CSRA precludes both the federal and state claims in the present case and therefore affirm the district court's ruling.

## I. FACTS AND PRIOR PROCEEDINGS

Plaintiff was a sales store checker at the United States Army Commissary in Fort Buchanan, Puerto Rico, where he was employed for approximately four years. In May of 1985, plaintiff received a letter from his immediate supervisor, defendant Frank Ortiz, notifying him of his proposed removal. Plaintiff was charged with deliberately undercharging a customer for food items, sometimes referred to as "sweethearting." He was granted thirty days to reply, within which time he filed both initial and supplemental replies denying the charges. Plaintiff claims that he requested a hearing prior to removal and that such request was denied. On August 27, 1985, he received an undated letter signed by defendant Michael Leyva, commissary officer, informing plaintiff of his removal effective the following day.

Plaintiff appealed his removal to the regional office of the Merit Systems Protection Board ("MSPB"), pursuant to 5 U.S.C. § 7513(d). Section 7513(d) provides that "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board...." At the time of said appeal, plaintiff was represented by counsel and received an evidentiary hearing, during which he submitted evidence on his own behalf and had the opportunity to cross-examine his former supervisors. The regional MSPB affirmed the Department's decision to remove plaintiff in a January 14, 1986 Initial Decision. Plaintiff then petitioned the Washington MSPB for a review of the Initial Decision and the petition was denied.

---

\* Of the District of Massachusetts, sitting by designation.

1. The October 31, 1986 Complaint names as defendants the "Department of the Army, and/or Merit Systems Protection Board, Hon. Caspar Weinberger in his Official capacity as Secretary of the Army, Maria L. Johnson, in her Official capacity as Acting Chairman of the Merit Systems Protection Board, Michael M. Leyva and Frank A. Ortiz, both in their individual and Official capacity, respectively, the U.S. Army Commissary Store, Fort Buchanan, Puerto Rico, and C. Spence Johnson, in his Official capacity as Civilian Personnel Liason Officer, Fort Buchanan, Puerto Rico."

The MSPB's Order denying the petition informed plaintiff of his right to seek judicial review before the United States Court of Appeals for the Federal Circuit under 5 U.S.C. § 7703. Section 7703(a)(1) provides: "Any employee adversely affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review of the order or decision." Furthermore, Section 7703(b)(1) directs that "a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." In accordance with Section 7703, plaintiff filed an appeal before the Federal Circuit Court of Appeals. Later, however, he requested and was granted leave to withdraw his appeal, without prejudice. Plaintiff then brought the present action in the United States District Court for the District of Puerto Rico seeking reinstatement, back pay, damages, and attorney's fees.

Plaintiff alleges that defendants, in failing to provide him with a hearing prior to removal from his government position, deprived him of his due process rights under the fifth amendment of the United States Constitution. Plaintiff also claims that he was defamed by his two former supervisors, defendants Leyva and Ortiz. He alleges specifically that they committed libel *per se* in the course of his removal proceedings by sending out two administrative letters containing intentionally false information.

Defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b) arguing that plaintiff's federal claims are precluded by the CSRA and that the defamation claims are barred by the absolute immunity of defendants Leyva and Ortiz. The district court allowed defendants' motion dismissing plaintiff's Complaint, and plaintiff appealed.

## II. PREEMPTION UNDER THE CIVIL SERVICE REFORM ACT

Plaintiff's appeal raises the threshold question of whether his claims, both federal and state, are preempted by the CSRA.

Defendants argue that the district court correctly determined that the CSRA preempts district court jurisdiction over plaintiff's federal constitutional claims and that the doctrine of absolute immunity bars plaintiff's libel claims against his former supervisors. Defendants argue in the alternative that the federal and state claims together fall within the scope of the CSRA and are thereby both preempted by that statute. Given our determination that the comprehensive remedial scheme provided for under the CSRA precludes plaintiff's entire district court action, we need not address the individual defendants' claims of absolute immunity.[2]

■ Plaintiff contends that the district court erred in concluding that the Federal Circuit Court of Appeals is the exclusive forum for judicial review of his claims. According to plaintiff, a plain language reading of the relevant statutory provisions confirms this error. Plaintiff points specifically to the language of Section 7703(a)(1) which provides that the aggrieved employee "may" obtain judicial review of an adverse MSPB final order. Plaintiff contends that the word "may" cannot be interpreted as foreclosing other avenues of judicial review not contemplated in Section 7703. We reject outright this interpretation of Section 7703. The plain language of the statute indicates that the aggrieved party may or may not seek judicial review of an adverse MSPB order, but in the event the party does pursue such action it must be in the Federal Circuit Court of Appeals. *See* 5 U.S.C. §§ 7703(a)(1) and (b)(1).

There is no longer any serious dispute that the CSRA preempts challenges to personnel actions brought under federal law. In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the United States Supreme Court refused to recognize a federal common law right to recover damages for unconstitutional actions in federal personnel decisions. Holding that the plaintiff was limited to the remedial

---

**2.** We also need not address the government's January 4, 1989 motion requesting substitution of parties, given our treatment of the CSRA preemption issue.

scheme established by the CSRA, the Court explained:

Federal civil servants are now protected by an elaborate comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies. Constitutional challenges to agency action ... are fully cognizable within this system.

*Id.* at 385–86, 103 S.Ct. at 2415 (internal footnote omitted). Furthermore, the Court in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), emphasizing that "[t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees," held that the CSRA precludes judicial review of certain adverse personnel action under the Back Pay Act, 5 U.S.C. § 5596. *Id.* 108 S.Ct. at 677. *See also Karahalios v. National Federation of Federal Employees,* —— U.S. ——, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) ("neither the language nor the structure of the [CSRA] shows any congressional intent to provide a private cause of action to enforce federal employees unions' duty of fair representation").

The actions challenged by plaintiff's constitutional claims are clearly "personnel actions" within the meaning of the CSRA. Section 2302(a)(2)(A) of Title 5 provides that personnel actions include actions under chapter 75 of that title, which incorporates removal proceedings. *See* 5 U.S.C. § 7512(1). Plaintiff's constitutional challenge is directed against the removal proceedings which led to his dismissal from employment at the Commissary. Plaintiff challenges the relevant procedural provisions both on their face and as applied to him. He contends that certain of the provisions are unconstitutional on the grounds of vagueness and overbreadth. He also contends that the provisions as applied denied him of due process because, among other things, he was not afforded a hearing

before his removal. Given that plaintiff's constitutional claims amount to a federal law challenge to an adverse personnel action, they are preempted by the CSRA consistent with the reasoning of *Bush* and *Fausto.*

■ The next question is whether the CSRA also preempts plaintiff's defamation claims against his former supervisors. In addition to arguing that the doctrine of absolute immunity bars the defamation claims against defendants Leyva and Ortiz, defendants argue that these state law claims are also precluded by the CSRA. Defendants rely principally on a recent Eleventh Circuit decision in which the court held that the CSRA preempts state law challenges to personnel actions within the scope of the Act's coverage. In *Broughton v. Courtney,* 861 F.2d 639 (11th Cir. 1988), the court determined that the actions being challenged were personnel actions within the scope of the CSRA and concluded: "In light of the congressional policy to unify challenges to federal personnel actions, we hold these state law claims are preempted by the CSRA." *Id.* at 644.[3]

We agree with the *Broughton* court's analysis of the preemption issue posed by state law challenges to adverse personnel actions within the scope of the CSRA. It is well settled that state law is preempted where it creates "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also California Federal Savings & Loan Association v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 693, 93 L.Ed.2d 613 (1987). The legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions. As the comprehensive discussion provided by the district court in *Tucker v. Defense Mapping Agency,* 607 F.Supp. 1232, 1238–41 (D.R.I.1985), points out: "The history

---

**3.** The plaintiff in *Broughton* had characterized his claims as conspiracy and intentional inter-

ference with employment.

and intent of the CSRA plainly prefigures that collateral district court jurisdiction would impede the ideals of fast, efficient management and greater uniformity in the judicial review process." *Id.* at 1240 n. 6. For example, the legislative history of the CSRA includes the following passage:

> Currently employees who wish to challenge Commission decisions generally file their claims with U.S. District Courts. The large number of these courts has caused wide variations in the kinds of decisions which have been issued on the same or similar matters. The section remedies the problem by providing that Board decisions and orders ... be reviewable by the Court of Claims and U.S. Courts of Appeals, rather than by U.S. District Courts.

S.Rep. No. 969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin. News 2723, 2785. The preemption issue before us, then, is whether adjudication of plaintiff's defamation claims would interfere with the attainment of the congressional goal of uniformity under the facts of this case. *Broughton v. Courtney*, 861 F.2d at 643.

The facts of this case, as alleged by plaintiff, establish that plaintiff's defamation claims constitute a challenge to adverse personnel actions within the meaning of the CSRA. Plaintiff alleges in his Complaint that defendants Leyva and Ortiz "intentionally published defamatory falsehoods against the plaintiff to third persons who understood the defamatory charges," causing injury to his reputation. Complaint at ¶ 15. In his opposition to defendants' motion to dismiss, plaintiff claims that the individual defendants committed libel *per se* by means of two letters prepared and released during the removal proceedings. Plaintiff further claims that the letters are a mandatory practice under relevant CSRA provisions. By plaintiff's own admission, then, the disputed conduct occurred in the course of his removal proceedings. Removal proceedings are incorporated in the definition of "personnel action" by Section 2302(a)(2)(A)(iii). *See* 5 U.S.C. § 7512 ("[t]his subchapter applies to (1) a removal ..."). The defamation claims, therefore, attempt to challenge collaterally an adverse personnel action. As this Court explained recently in *Montplaisir v. Leighton*, 875 F.2d 1 (1st Cir.1989): "Where labor-law preemption is an issue, creative labelling cannot carry the day. Rather, the needed reconnaissance focuses upon the 'conduct being regulated, not the formal description of governing legal standards....'" *Id.* at 4 (quoting *Amalgamated Ass'n of Street, Electric, Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1921, 29 L.Ed.2d 473 (1971)).

Plaintiff contends that he was treated improperly in the course of his removal proceedings by defendants Leyva and Ortiz because they used the proceedings as an opportunity to seek retribution against him for an earlier dispute. He alleges, moreover, vindictive motivation behind the removal proceedings generally. Section 2302(b) provides that it is a prohibited personnel practice to "discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others." 5 U.S.C. § 2302. The discriminatory treatment on non-meritorious or impermissible grounds which plaintiff alleges is therefore covered by the section 2302(b) prohibition. Furthermore, given that it is undisputed that defendants Leyva and Ortiz were plaintiff's supervisors at the Commissary, they are among the class of federal employees whose personnel decisions may be challenged under the CSRA. *See* 5 U.S.C. § 2302(b) ("[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority ...").

Plaintiff's defamation claims against his former supervisors challenge a prohibited personnel practice under 5 U.S.C. § 2302, and therefore fall within the scope of the CSRA. Cognizant of the congressional policy to unify challenges to federal personnel decisions, we conclude that these state law claims are preempted by the CSRA. Plaintiff's opportunity for judicial review of his

claims is limited to review of the MSPB's final order in the Federal Circuit Court of Appeals, as delineated in 5 U.S.C. §§ 7703(a)(1) and (b)(1). Providing an additional forum for adjudication of these claims would frustrate Congress' intention to unify challenges to federal personnel decisions under the CSRA's comprehensive remedial structure. *See Montplaisir v. Leighton*, 875 F.2d at 8 ("Given the comprehensive nature of the Act's remedial scheme and the disruption which private tort actions would cause to its finespun fabric, we think it readily evident that Congress did not intend—and we should now allow—supplementary judicial remedies of the sort envisioned by appellants."); *see also Tucker v. Defense Mapping Agency*, 607 F.Supp. at 1239 ("the CSRA is so precise and delicately balanced, that the engrafting of ancillary remedies upon the framework of the Act would inevitably create chaos within the federal sector, and sow the seeds of impermissible conflict").

## III. THE LACK OF A HEARING ON DEFENDANTS' MOTION TO DISMISS

■ Plaintiff also argues that the district court erred in ruling on defendants' motion to dismiss without conducting a hearing. According to plaintiff, this prevented key facts from surfacing at the time the motion was decided. Defendants point out in response that plaintiff failed to request a hearing before the district court, and they contend that this amounts to a waiver of any potential right he may have had to a hearing.

We note that a district court should not dismiss a complaint on the basis of a Fed. R.Civ.P. 12(b) defense without affording the plaintiff some opportunity to be heard. Where the defendant has challenged the plaintiff's assertion of federal jurisdiction under Rule 12(b)(1), the court should give the plaintiff an opportunity to present facts in support of his jurisdictional contention. The facts may be presented by affidavit or by deposition or in an evidentiary hearing. The district court in the present case allowed plaintiff an extension of time in which to file an opposition to the motion to dismiss. Though the court denied a subsequent request for extension, the court indicated that it would give proper consideration to plaintiff's belated opposition. In his opposition, however, plaintiff provided no facts whatsoever to cure the jurisdictional deficiency that defendants relied on as the basis of their motion to dismiss. Plaintiff's opposition merely restated allegations already included in the Complaint. Plaintiff had the opportunity to file affidavits in opposition to the motion to dismiss, but failed to do so. Given that plaintiff was afforded an opportunity to present facts in support of his jurisdictional contention and given his failure to request a hearing, the district court did not act improperly in ruling on the motion without conducting a hearing.[4]

## IV. CONCLUSION

Plaintiff's district court action constitutes a challenge to adverse personnel actions within the scope of the CSRA. Given Congress' clear intention to provide an exclusive procedure for challenging federal personnel decisions under the CSRA's comprehensive remedial scheme, we conclude that the CSRA preempts both the federal and state claims in the present case.[5]

The district court's judgment is

*Affirmed.*

---

**4.** Though plaintiff now seeks a remand with instructions for a hearing, he refers to additional information that bears solely on the merits of the dispute rather than on the jurisdictional question. Even if we had concluded that the district court erred in not conducting a hearing on the motion to dismiss, we see no reason why a hearing would alter in any way the jurisdictional deficiency in the present case.

**5.** Accordingly, we cannot say that the district court abused its discretion in setting aside the September 8, 1987 entry of default against defendants Frank Ortiz and Spence Johnson, pursuant to Fed.R.Civ.P. 55(c), and we summarily reject this assignment of error.