Melissa FERRIS, Plaintiff,

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., Defendants.

No. 99–199–B–H.

United States District Court, D. Maine.

April 27, 2000.

Susan V. Wallace, Brunswick, ME, for Melissa Plaintiff.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, Joe Goldberg, Litigation American Federation of Government Employees, Washington, DC, Halsey B. Frank, Office of the U.S. Attorney, Portland, ME, for Defendants.

## ORDER ON INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

HORNBY, Chief Judge.

Can a temporary federal employee who is the victim of retaliatory threats and harassment recover damages from the other federal employees who were involved? I hold that such claims are preempted by the Civil Service Reform Act and the Whistleblower Protection Act.

Melissa Ferris was a seven month temporary nursing assistant at the Togus Veterans Medical Center ("VA Togus") here in Maine. She has sued for damages ten individual co-employees and supervisors at Togus, as well as their Union, the American Federation of Government Employees. In her lawyer's words,

> Plaintiff alleges that she was the victim of retaliation, harassment, threats, false accusations and defamation after she reported patient abuse, cheating on a CPR examination, and the aforesaid acts

against her committed by co-workers at VA Togus. Plaintiff alleges that co-workers (the individual defendants) retaliated, harassed, threatened, accused and defamed her in a concerted, ongoing effort to shield those in their ranks from reports like plaintiff's of their misdeeds, and that as a result of their conduct, she suffered emotional distress, and VA Togus management—who are *not* named as parties hereto—took adverse employment actions against her, including termination.

Pl.'s Opp'n with Mem. of Law Re: Mot. to Dismiss at 1.

The ten individual co-employees and supervisors have filed a motion to dismiss, maintaining that Ferris's remedies lie in other forums [1] and that she cannot proceed on the state law claims and the federal RICO claims she is making here. The motion to dismiss is **GRANTED**.

## ANALYSIS

### A. State Law Claims

Ferris has sued the federal employees for damages and other relief under the following state law claims: the Maine Whistleblower Protection Act and the Maine Human Rights Act (Count Four) [2]; Maine's common law concerning intentional infliction of emotional distress (Count Five); Maine's common law of defamation (Counts Six and Seven); and Maine's common law of interference with an advantageous relationship (her VA employment) (Count Eight).

The Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), allows federal employees

---

**1.** Ferris also filed a complaint with the Office of Special Counsel, a complaint that is now pending before the Merit System Protection Board. Apparently, she also is pursuing an administrative claim against the United States under the Federal Tort Claims Act. *See* Defs.' Reply in Supp. of Mot. to Dismiss at 3.

**2.** The plaintiff seeks to clarify Count Four of her Amended Complaint by filing a Second Amended Complaint. *See* Pl.Mem. in Opp'n with Mem. of Law Re: Mot. to Dismiss at 8 n. 3. Even if I were to allow this limited amendment, the plaintiff's claims under the Maine Whistleblower Protection Act and Maine Human Rights Act would still be preempted for the reasons discussed in the text.

or former federal employees like Ferris to report a violation of any law, rule or regulation, including retaliation, to the Office of Special Counsel. *See* 5 U.S.C. § 1213. With the Whistleblower Protection Act amendment, Pub.L. No. 101–12, 103 Stat. 16 (1989) (codified at 5 U.S.C. § 1201 *et seq.*), the CSRA also prohibits personnel actions (or threats) against someone like Ferris for disclosing a violation of any law, rule or regulation. *See* 5 U.S.C. § 2302(b)(8) & (9). A prohibited "personnel action" includes any "disciplinary or corrective action," transfer, reemployment, or "any other significant change in duties, responsibilities, or working conditions." *Id.* § 2302(a)(2)(A). The Office of Special Counsel has responsibility for investigating reports of any "prohibited personnel actions." *Id.* § 1214.

When the Office of Special Counsel receives an allegation of a prohibited personnel action, it conducts an investigation of the allegation "to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." *Id.* § 1214(a)(1)(A). If the Special Counsel terminates an investigation, a whistleblower like Ferris may petition the Merit System Protection Board for corrective action. *See id.* §§ 1214(a)(3) & 1221. Ultimately, a whistleblower may seek review of the Merit System Protection Board decision in the Court of Appeals for the Federal Circuit. *See id.* § 7703.

In the CSRA, Congress has provided a comprehensive treatment of federal employees' personnel issues. The Supreme Court consequently has held that the CSRA preempts other claims by aggrieved federal employees, including claims brought against supervisors in their individual capacities. *See Bush v. Lucas,* 462 U.S. 367, 381–90, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to infer a

*Bivens* remedy where the CSRA covered underlying retaliatory personnel actions); *accord Berrios v. Department of Army,* 884 F.2d 28, 30–33 (1st Cir.1989) (finding that the CSRA preempted state defamation claim).

The remedy available to employees who pursue redress under the CSRA is "corrective action." 5 U.S.C. §§ 1214(g) & 1221(g). Corrective action includes replacing the individual "as nearly as possible" in the original position, as well as reimbursement from the employing agency for attorney fees, back pay, benefits and other "reasonable and foreseeable consequential damages." 5 U.S.C. §§ 1214(g) & 1221(g)(1)(A). Individual supervisors and co-workers, on the other hand, are not liable for monetary damages under the CSRA.[3] Nonetheless, this latter limitation does not prevent the CSRA from preempting state and common law remedies. As the Supreme Court acknowledged in *Bush,* the CSRA may provide "less than a complete remedy for the wrong." *Bush,* 462 U.S. at 373, 103 S.Ct. 2404.

In fact, the CSRA's limitations on available relief represents a balance that Congress has chosen in seeking to prevent and correct unfair personnel actions while at the same time controlling the cost involved in investigating and defending personnel actions. *See id.* at 388–89, 103 S.Ct. 2404. In *Bush,* the Supreme Court recognized that Congress is in the best position to craft a remedial scheme for federal employees that weighs these competing interests. *See id.* at 388–90, 103 S.Ct. 2404. The CSRA's protection of supervisors from individual liability for personnel actions ensures that supervisors are not improperly deterred from disciplining employees. *See id.* at 388–89, 103 S.Ct. 2404. By consolidating all claims arising out of

---

**3.** The CSRA does provide for disciplinary action against any current employee who commits a prohibited personnel action. Specifically, the MSPB can refer a current employee to the Office of Special Counsel for investigation if the MSPB finds reason to believe that

the employee in question committed a prohibited personnel action. *See* 5 U.S.C. § 1221(f)(3). After an investigation, the Office of Special Counsel may bring a disciplinary action by filing a complaint with the MSPB. *See id.* at § 1215.

federal personnel actions in the Merit System Protection Board and the Federal Circuit, moreover, the CSRA prevents piecemeal development of civil service law in various federal district courts throughout the United States and ensures that all federal employees receive substantially equivalent remedies. *See United States v. Fausto,* 484 U.S. 439, 444–45, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Berrios,* 884 F.2d at 33. The Supreme Court has determined that allowing a federal employee to pursue state and common law claims would only defeat Congress's attempt to develop a unified body of case law relating to federal personnel matters. *See Fausto,* 484 U.S. at 449, 108 S.Ct. 668. Similarly, the First Circuit has stated that allowing such state claims to proceed would create "an obstacle" to the CSRA's purpose. *Berrios,* 884 F.2d at 31 (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

The Supreme Court's decision in *Bush* and the First Circuit's decision in *Berrios* involved challenges to the CSRA before the effective date of the Whistleblower Protection Act. But courts facing the question of preemption following the expansion of CSRA protection for whistleblowers have continued to hold that the CSRA is the exclusive remedy for federal employees subjected to retaliatory personnel actions. *See Grisham v. United States,* 103 F.3d 24, 26–27 (5th Cir.1997) (finding that claims brought by former federal employee under First Amendment and Federal Tort Claims Act were precluded by the Whistleblower Protection Act and the CSRA); *Rivera v. United States,* 924 F.2d 948, 952–54 (9th Cir.1991) (same); *Sawyer v. Musumeci,* No. 96 CIV. 6497(LLS), 1997 WL 381798, at *1–*2 (S.D.N.Y. July 9, 1997) (dismissing for lack of subject matter jurisdiction claims by VA employee against his two supervisors that alleged retaliation for whistleblowing and explaining that employee had to exhaust administrative remedies under the CSRA).

■ Thus, it is clear that the CSRA preempts Ferris's claims against these individual defendants to the extent that her claims are based on personnel actions. Under the Whistleblower Protection Act's broad definition of personnel action, any claim by Ferris arising out of the Amended Complaint's allegations of unfair work assignments, selective enforcement of workplace rules, her transfer from Ward 73, her eventual dismissal from VA Togus, and the alleged refusal to rehire can and should proceed through the CSRA administrative process. In fact, Ferris is seeking redress through this process with a case currently before the Merit System Protection Board. If the decision there is adverse, Ferris may seek judicial review with an appeal to the Federal Circuit. Given these opportunities for review, allowing Ferris to proceed with claims arising out of personnel actions in this court as well would improperly supplement her opportunities for redress under the CSRA.

Therefore, I am left to consider what claims Ferris can state that do not flow from the personnel actions listed above. Stripping away the personnel actions taken against Ferris, she is left alleging that her co-workers treated her poorly. But to allege damages arising out of this poor treatment, Ferris inevitably points to the various personnel actions taken against her. *See, e.g.,* Am.Compl. Count Four ¶¶ 70–72 (termination of job, loss of wages and benefits, damage to reputation and career development, mental and emotional distress). In other words, once Ferris's complaints are stripped of the personnel actions, she simply cannot state a claim that the behavior of the individual defendants caused her a cognizable injury. Rather, all of her claims arise out of her whistleblowing and are "inextricably linked" to her employment at VA Togus. *See Jarvis v. Cardillo,* No. 98 CIV. 5793(RWS), 1999 WL 187205, at *12 (S.D.N.Y. April 6, 1999) (finding that federal employee's assault claim against his supervisor was precluded by the CSRA because assault "was a direct result of

[employee's] whistleblowing" and "inextricably linked" to his employment). Therefore, I find that the CSRA's administrative scheme preempts Ferris's state and common law claims against the individual federal employees.[4]

### B. Federal Claim Under RICO (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*)

Ferris's federal RICO claims against the individual defendants (Counts One and Two) likewise may not proceed. The Supreme Court has recognized that the CSRA establishes "the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." *Fausto*, 484 U.S. at 449, 108

S.Ct. 668 (citations omitted). In *Fausto*, the Court concluded that the CSRA prevented a federal employee from seeking a remedy under the Back Pay Act, 5 U.S.C. § 5596, in the Claims Court. *See id.* at 454, 108 S.Ct. 668. The Court reasoned that allowing the employee's back pay claim to proceed in the Claims Court would undermine the CSRA's attempt to provide a limited remedy to some categories of employees as well as to streamline the review of actions relating to federal employment within the Merit System Protection Board and the Federal Circuit.[5] *See id.* at 449, 108 S.Ct. 668.

Following the Supreme Court's decisions in *Bush* and *Fausto*, the First Circuit has recognized that the CSRA precludes feder-

---

4. If Ferris were able to segregate out harassment that was not related to personnel actions (she has not done so), arguably she might be able to state a claim for intentional infliction of emotional distress that was not preempted. According to the Law Court, however, such a claim requires the plaintiff to allege that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." Although "severe" emotional distress is usually manifested by "shock, illness or other bodily harm," such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional, as opposed to negligent, infliction of emotional distress. In appropriate cases, "severe" emotional distress may be inferred from the "extreme and outrageous" nature of the defendant's conduct alone. *See Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me.1979) (citing Restatement (Second) of Torts § 46, cmts. d, i–k (1965)).

In her Amended Complaint, Ferris has failed to allege the fourth element, which requires that the emotional distress she suffered be so "severe" that "no reasonable [person] could be expected to endure it." Instead,

Ferris has alleged in Count V that "[t]he defendants' *conduct*, alone and together, is so severe that no reasonable person could be expected to endure it." Am.Compl. Count Five ¶ 66 (emphasis added). Although *Vicnire* permits a factfinder to infer severe emotional distress from the extreme and outrageous nature of the defendant's conduct, *see* 401 A.2d at 154, the plaintiff must still allege that she in fact suffered severe emotional distress, not merely that the defendant's conduct was severe.

In this case, Ferris has not alleged objective symptomatology or severe emotional distress, and in the Amended Complaint she does not appear to state any facts that would support either allegation. Rather, Ferris alleges only that she was "humiliated and embarrassed" when co-workers excluded her from a patient funeral. *See* Am.Compl. ¶ 43(g). Assuming that Ferris could prove this allegation, her humiliation and embarrassment do not allow me to infer that Ferris suffered severe emotional distress. Therefore, I find that Ferris has failed to state a claim for intentional infliction of emotional distress against the individual defendants for their non-personnel action harassment.

5. Even if the remedy available to Ferris under the CSRA is limited due to the temporary nature of her employment, *Fausto* —involving a federal employee who, because of his service category, was not entitled to administrative or judicial review under the CSRA—still supports preclusion of Ferris's other remedies. *See Fausto*, 484 U.S. at 448–51, 108 S.Ct. 668.

al employees from seeking review of personnel actions in a district court. *See, e.g., Berrios,* 884 F.2d at 30 (stating that "the CSRA preempts challenges to personnel actions brought under federal law" and concluding that the CSRA preempted "plaintiff's entire district court action," which included constitutional and state law claims against the Department of the Army and his individual supervisors). More recently, the Seventh Circuit similarly has held that the CSRA's "comprehensive review system ... implicitly repealed the jurisdiction of federal district courts over personnel actions of a type appealable to the MSPB." *Paige v. Cisneros,* 91 F.3d 40, 43 (7th Cir.1996).

■ I conclude that, on this reasoning, to the extent Ferris's RICO claims are based on what are essentially personnel actions, they may not proceed. *Accord Rosenthal v. United States,* No. 97-C-1424, 1998 WL 312118 at *10 (N.D.Ill. June 6, 1998) (finding plaintiff's RICO claim was barred by the CSRA "to the extent [the claim] is contesting any [personnel] action taken."), *aff'd,* 175 F.3d 1020 (7th Cir.1999) (unpublished opinion), *cert. denied,* —— U.S. ——, 120 S.Ct. 183, 145 L.Ed.2d 154 (1999); *Petrousky v. United States,* No. 91-CV-1048, 1991 WL 268689, at *3-*4 (N.D.N.Y. Dec.11, 1991) (dismissing claims against the United States by a former civilian Army employee who alleged a conspiracy to retaliate against him for whistleblowing, finding that the plaintiff's alleged injuries were "unique to an employee" and, therefore that the plaintiff was "an aggrieved federal employee ... bound to seek redress for his claims through the avenues created by Congress in the CSRA").

Therefore, I am left to consider whether Ferris states a RICO claim that does not rely on personnel actions. She does not. To bring a civil RICO claim, Ferris must allege an injury in her business or property by reason of a RICO-prohibited activity. *See* 18 U.S.C. § 1964(c). To meet this requirement, Ferris alleges in her Amend-

ed Complaint: "As a direct and proximate result of the conspiracies alleged, [her] employment at VA Togus was terminated, and she has lost and continues to lose wages, employee benefits and social security credits." Am.Compl. Count One ¶ 72 & Count Two ¶ 70. Additionally, she alleges that "her career development [has been] impeded or impaired." Am.Compl. Count One ¶ 73 & Count Two ¶ 71. But these injuries are the direct result of personnel actions taken against Ferris. Because the CSRA provides a comprehensive remedy for adverse personnel actions, Ferris must seek redress for such injuries under the CSRA, not RICO.

### CONCLUSION

For these reasons, the ten individual defendants' motion to dismiss is **GRANTED.**

So Ordered.