BOUDIN, Circuit Judge.
A federal statute bars employment in the Executive Branch of citizens and resident aliens who were required to register for the draft with the Selective Service System and who “knowingly and willfully” did not do so before age twenty-six. In the district court, four plaintiffs, who are male United States citizens over age twenty-six, sought to challenge this statutory bar on constitutional grounds, failed on the merits, and now appeal.
The statutory bar reads as follows:
An individual—
(1) who was born after December 31, 1959, and is or was required to register under section 3 of the Military Selective Service Act (50 U.S.C. App. 453); and
(2) who is not so registered or knowingly and willfully did not so register before the requirement terminated or became inapplicable to the individual,
shall be ineligible for appointment to a position in an Executive agency.
5 U.S.C. § 3328(a) (2006).[1] Section 3 of the Military Selective Service Act, 62 Stat. 604, 605, as amended, 50 U.S.C. app. § 453 (2006), empowers the President to require every male citizen and male resident alien between the ages of eighteen and twenty-six to register for the draft. In 1980, President Carter reinstituted the registration requirements for young men. Proclamation No. 4771, 3 C.F.R. 82 (1981), reprinted as amended in 50 U.S.C. app. § 453 app. at 59-60.
The Office of Personnel Management (“OPM”), which manages civil service employment in the Executive Branch, has adopted corresponding regulations. 5 C.F.R. §§ 300.701-.707 (2010). These regulations provide that a civil service employee who was required to register
will be terminated by his agency under the authority of the statute and these regulations if he has not registered as required, unless he registers or unless, if no longer eligible to register, OPM determines in response to his explanation that his failure to register was neither knowing nor willful.
Id. § 300.707.
Three of the plaintiffs in this case were discharged by their federal agencies when it was discovered that they had not registered although required to do so; the fourth resigned when confronted with his failure to register and says that his resignation was forced by the statutory bar. None of the four presently challenges the premise that his failure to register was knowing or willful, and none sought to pursue to the end the statutory remedies prescribed for civil service employees who dispute their removals.
Instead, the plaintiffs brought an original action in the district court seeking reinstatement and claiming that the statutory bar is unconstitutional; the grounds asserted are that it is both a forbidden bill *8 of attainder under Article I, Section 9, Clause 3 of the Constitution and, because it applies to men but not women, an unlawful discrimination under the equal protection component of the Fifth Amendment. The latter claim has already been rejected by the Supreme Court, Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), but the plaintiffs may intend to ask the Court to revisit the ruling.
In the district court, the government asserted that the claims were barred because the plaintiffs had a statutory route to dispute their removals or forced resignation and that this route was intended by Congress to be exclusive for cases covered by the statutory remedy. This statutory remedy, which will be described in more detail hereafter, ordinarily leads through the Merit Systems Protection Board (“MSPB” or “Board”) and, on judicial review, to the U.S. Court of Appeals for the Federal Circuit. Three of the four plaintiffs did not pursue this avenue; one did but abandoned it after an adverse decision by the MSPB administrative law judge.
The district court declined to dismiss the action on jurisdictional grounds, initially sided with the plaintiffs on the bill of attainder issue, and ultimately reversed ground and decided against the plaintiffs on their constitutional claims. Elgin v. United States, 594 F.Supp.2d 133 (D.Mass. 2009) , vacated, 697 F.Supp.2d 187 (D.Mass. 2010) . The plaintiffs now seek review in this court; the government continues to argue both that the district court had no jurisdiction and that, if it did, the statutory bar is constitutional. An objection to subject matter jurisdiction takes priority, and we begin (and end) with that issue.
Ordinarily, and as a default remedy, a district court has authority as a federal court of general jurisdiction — subject to various limitations — to consider claims against federal government officials that they are acting unconstitutionally and should be enjoined. See 28 U.S.C. § 1331 (2006); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701-02, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Suits against the federal government itself or its departments' — -the plaintiffs’ target here— are complicated by sovereign immunity considerations, see, e.g., FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), but the government has invoked no such defense in this case, see 5 U.S.C. § 702; Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
Instead, the government argues the exclusive remedy for the removal or forced resignation of the four plaintiffs is provided by the Civil Service Reform Act (“CSRA”), Pub.L. No. 95-454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.). The CSRA scheme, set forth in Title 5, Chapter 75, Subchapter II and augmented by regulations, allows certain employees in the civil service — including those (such as the plaintiffs) in the competitive service — to seek review if they are removed “for such cause as will promote the efficiency of the service,” 5 U.S.C. § 7513(a); the route prescribed is by appeal to the MSPB and, if dissatisfied with the result, appeal to the Federal Circuit, whose decisions in turn are renewable by the Supreme Court.[2]
Although the CSRA does not in terms describe this scheme as exclusive of other remedies, Congress intended the scheme- *9 at least where it applies and provides a mechanism for administrative and judicial review and relief — to be exclusive of ordinary district court actions to challenge a removal. The Supreme Court has suggested that this is so, United States v. Fausto, 484 U.S. 439, 443-55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); see also Bush v. Lucas, 462 U.S. 367, 388-89, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); we have recognized it to be so, Berrios v. Dep’t of the Army, 884 F.2d 28, 31 (1st Cir.1989); and the legislative history bears out this intention, S.Rep. No. 95-969, at 9-10, 53, 63 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2731-32, 2775, 2785.
The plaintiffs do not contest the view that the statutory route, where it applies, is the exclusive remedy for an employee challenging removal; but they argue that the government has taken inconsistent positions and that, in any event, for various reasons the statutory remedy is not available to them. However, the statutory route does in fact give the plaintiffs a route to direct review of their constitutional claims by an Article III court; Congress intended that route to be exclusive in removal cases; and, despite some confusion in the precedents, both literal language and Congress’ policy require that result.
First, the plaintiffs suggest that the government’s objection is foreclosed because (a) it resisted efforts by one of the plaintiffs to raise this very kind of claim through the MSPB route, and (b) it has raised the subject matter jurisdiction claim only on reconsideration in the district court. But, as it turns out, the government is within its rights to raise the objection: subject matter jurisdiction claims are not waivable and may be raised for the first time even on direct appeal, Fed. R.Civ.P. 12(h)(3); United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).
Failure to exhaust administrative remedies is a waivable objection. Global NAPs, Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 85 (1st Cir.2010). But, if the CSRA remedy is available and intended to be exclusive, it does not prescribe some administrative step required before resorting to district court, e.g., Woodford v. Ngo, 548 U.S. 81, 88-89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); rather, the remedy displaces the plenary district court action entirely, just as a statute channeling agency review to a circuit court displaces a direct review action in the district court. See Whitman v. Dep’t of Transp., 547 U.S. 512, 513-14, 126 S.Ct. 2014, 164 L.Ed.2d 771 (2006) (per curiam).
Second, the remedy in Chapter 75, Sub-chapter II applies to removals “for such cause as will promote the efficiency of the service,” 5 U.S.C. § 7513(a), and the question arises whether removal on account of the statutory bar falls in that category. Arguing that section 7513(a) is limited to misconduct, the plaintiffs cite Supreme Court language stating that “Chapter 75 of the Act governs adverse action taken against employees for the ‘efficiency of the service,’ which includes action of the type taken here, based on misconduct,” Fausto, 484 U.S. at 446, 108 S.Ct. 668. However, “includes” does not mean “limited to.”
The CSRA is a successor to earlier civil service statutes, including the Lloyd-La Follette Act, which created the first general statutory protection for civil servants, see Arnett v. Kennedy, 416 U.S. 134, 149-50, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), and used the same “efficiency of [the] service” phrase as the substantive standard for removal, see Act of Aug. 24, 1912, ch. 389, § 6, 37 Stat. 539, 555 (repealed 1978). That standard was understood to include removals that were based on disqualifying *10 conditions that existed before the employees were hired, and Congress was aware of and intended to adopt this interpretation.
Thus, prior to the CSRA’s enactment, the Senate Committee on Governmental Affairs noted that for covered civil service employees, “existing law provides that an individual may be removed only for such cause as will promote the efficiency of the service.” S.Rep. No. 95-969, at 9 (1978), reprinted in 1978 U.S.C.C.A.N. 2723, 2731. The committee reported that in 1976, 17,-157 federal employees had been dismissed under that standard, and it listed eight different categories, including 240 “Removed because of some condition that existed before they were hired.” Id. In recommending section 7513, the committee said that it did not intend any substantive change to the existing law permitting removals only for “efficiency of the service.” Id. at 50, reprinted in 1978 U.S.C.C.A.N. at 2772.
OPM shares this view of the “efficiency of the service” standard. In a related part, 5 C.F.R. pt. 731, OPM regulations discuss the standard for a “suitability action,” including a “removal,” 5 C.F.R. § 731.203; the regulations state that a suitability action may be taken only to “protect the integrity or promote the efficiency of the service,” id. § 731.201, which includes “[a]ny statutory or regulatory bar which prevents the lawful employment of the person involved in the position in question,” id. § 731.202(b)(8). See also id. § 731.501(a) (right to appeal suitability action to the MSPB).
Third, the plaintiffs question whether the removals in this case were intended as removals for the “efficiency of the service.” The removal notices, it appears, cited the statutory bar, 5 U.S.C. § 3328 — not Chapter 75, Subchapter II and the “efficiency of the service” phrase — but the legislative history and regulations make clear that a removal because of a statutory bar is one for the “efficiency of the service,” thereby triggering the opportunity — and obligation — to use the MSPB procedures and to seek judicial review in the Federal Circuit.
The plaintiffs’ contrary suggestion rests on a misreading of Department of the Navy v. Egan, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). There, the Court relied on the ground given in a removal notice to conclude that the action was taken under the “efficiency of the service” standard and not on grounds of national security. Id. at 522 & n. 4, 523, 108 S.Ct. 818. A national security removal is explicitly exempted from all “other statutes” and review is narrowly limited. 5 U.S.C. § 7532; see id. § 7512(A) (exempting a section 7532 removal); Egan, 484 U.S. at 525-26, 108 S.Ct. 818. Here, no such statutory exemption applies, and the notice merely particularizes the “efficiency of the service” basis for the removal.
Fourth, the MSPB has suggested that a person who was wrongly hired in the face of an absolute statutory bar was never an “employee” at all because the appointment was void ab initio, and therefore, when the error is discovered, the person removed is not a former “employee” who can invoke the CSRA. E.g., Hope v. Dep’t of the Army, 108 M.S.P.R. 6, 9 (2008) (citing cases). This “reasoning,” see Travaglini v. Dep’t of Educ., 18 M.S.P.R. 127, 132-37 (1983) , aff'd as modified, 23 M.S.P.R. 417 (1984), underlies statements by the Board, occasionally noted but not endorsed by the Federal Circuit,[3] that a removal because of *11 an absolute statutory bar is outside the Board’s authority under the CSRA because the employee should not have been hired in the first place.
This is not the approach taken by modern courts in construing remedial statutes, and the government should be embarrassed ever to have taken advantage of such question begging rhetoric. The plaintiffs in this case were hired by the federal government, served (in some cases for many years) as its employees, exercised official authority, and were then terminated. The idea that Congress would implicitly exclude them from the category of former “employees” entitled to seek redress under the CSRA — if and to the extent that their removal was outside a statutory bar or that the bar was itself unconstitutional — beggars belief. ,
The CSRA governs “removals”; nothing in its language suggests that a case involving a statutory bar follows a different route; and the legislative history already described refutes any such suggestion. Of course, if the employee comes within the statutory bar and the statutory bar is constitutional, the discharged employee will not get reinstated; but the proper outcome should be a decision denying reinstatement on the merits. Thus, the statutory route gives the plaintiff a full opportunity to present both questions to the Federal Circuit, which is an Article III court.
Fifth, this brings us at last to the question whether there is some implied exception to the exclusive CSRA remedy because the challenge in this case is a constitutional one sounding in equity or because it is. a facial constitutional attack rather than an “as-applied” challenge. The Supreme Court has already ruled that Bivens-type constitutional claims for damages cannot bypass CSRA limitations, Lucas, 462 U.S. at 368, 103 S.Ct. 2404; and as to equitable constitutional claims, there is something of a circuit split,[4] but this circuit has been firm in treating the CSRA remedy as exclusive as to equitable constitutional claims as well.
Thus, this court held in Berrios that an employee fired by the government could not bring a due process claim and other facial and as-applied constitutional claims by an original action in the district court but had to follow the CSRA scheme through the MSPB into the Federal Circuit. 884 F.2d at 31. Another decision in this circuit reaffirmed the general rule but found it inapplicable because the employee’s classification excluded him from the CSRA remedy. Pathak v. Dep’t of Veterans Affairs, 274 F.3d 28, 31-33 (1st Cir. 2001); see also Irizarry v. United States, 427 F.3d 76, 77-78 (1st Cir.2005). None of our cases has adopted the distinction urged nor does it have any obvious basis in policy.
Constitutional claims are common in administrative proceedings — especially equal *12 protection and procedural due process claims — and are part of the ordinary fodder of review in discharge cases. Often such claims are made along with factual claims denying the conduct alleged against the employee and statutory or rule-based claims as well. Congress’ desire to consolidate employee removal in a single forum was based on the action taken against the employee rather than the precise arguments made in contesting that action.
What matters in the end is whether the CSRA process can afford relief. The plaintiffs argue that a facial claim attacking the underlying statute is one for which the MSPB cannot grant relief to them and therefore the premise — that the CSRA remedy is exclusive where it applies — does not itself apply. And to show that there is no MSPB remedy, the plaintiffs point to statements by the MSPB itself that it, “as an administrative agency, is without authority to determine the constitutionality of Federal statutes.” Bayly v. OPM, 42 M.S.P.R. 524, 525-26 (1990).[5]
But while the Board may be powerless to strike down the statute, the Federal Circuit on review of the Board may do so, 5 U.S.C. § 7703(c), and, if it agreed with the plaintiffs on the merits, remand to the Board to grant relief. See Shalala v. III. Council on Long Term Care, Inc., 529 U.S. 1, 23-24, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000); Thunder Basin Coal Co., 510 U.S. at 215, 114 S.Ct. 771. Accordingly, the CSRA regime does provide an opportunity for the plaintiffs to pbtain a full determination of their facial constitutional challenge. Indeed, even if the MSPB had the first word on the constitutional issue, it certainly would not have the last.
Plaintiffs object that the Federal Circuit has regularly said that its jurisdiction is coextensive with that of the MSPB as to the categories of cases that fall within the CSRA. E.g., Rosano v. Dep’t of the Navy, 699 F.2d 1315, 1318 (Fed.Cir.1983). That proposition happens to be true as a general statement, but it was not made by the Federal Circuit in our context and would make no sense if it were: for in such cases the MSPB is limited only because of a doctrine that uniquely applies to administrative agencies and not to the Federal Circuit or any other Article III court.
The Federal Circuit has never said that it was powerless to act where a removal occurred and the underlying statute that prompted the removal was itself unconstitutional. On the contrary, that court has said that if a colorable constitutional claim were presented, it would have to address the issue. See Riggin v. Office of Senate Fair Emp’t Practices, 61 F.3d 1563, 1570 (Fed.Cir.1995) (discussing Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)); Brockmann v. Dep’t of the Air Force, 27 F.3d 544, 546-47 (Fed.Cir.1994) (same). And if it mistakenly held otherwise, the remedy would be on certiorari to the Supreme Court.
The substantive constitutional claims in this case are unpromising, given that one conflicts with governing Supreme Court precedent and the other ignores the fact that the plaintiffs were free to avoid the bar by timely registration. But the CSRA channels removals covered by the CSRA— and thus the plaintiffs’ claims — to the Federal Circuit, see Hall v. United States, 617 F.3d 1313, 1316 (Fed.Cir.2010); that principle serves an important purpose; the CSRA provides a remedy for a meritorious *13 facial challenge; and plaintiffs were obliged to use it.
The judgment of the district court is vacated and the case remanded for entry of a new judgment denying relief for lack of subject matter jurisdiction and without prejudice to the pursuit of remedies under the CSRA to the extent that they may be available at this late date. Each side shall bear its owns costs on this appeal.

It is so ordered.

. “Executive agency” is defined to mean an "Executive department, a Government corporation, and an independent establishment.” 5 U.S.C. § 105.

. See 5 U.S.C. §§ 7511-7514, 7701-7703; 5 C.F.R. §§ 752.401-406, 1201.3, 1201.120. The remedy extends to "forced resignations" — the claim made by one of the plaintiffs here — which are treated as constructive "removals.” See Carrow v. MSPB, 626 F.3d 1348, 1352-53 (Fed.Cir.2010).

. In Diamond v. U.S. Agency for International Development, 108 F.3d 312 (Fed.Cir.1997), the Federal Circuit mentioned the MSPB assertion, without passing on its validity, saying only that it did not apply to the case at hand. Id. at 316. In Daneshpayeh v. Department of *11 the Air Force, No. 93-3476, 1994 WL 18964 (Fed.Cir. Jan. 26, 1994) (per curiam) — an unpublished, non-precedential decision, see Fed. Cir. R. 32.1, 36 — the Federal Circuit affirmed an MSPB decision dismissing an appeal based on the supposed rule, but the court noted that the removed person took "no issue with the Board’s recital of the applicable law” id. at *2, and suggested doubts as to the "Board’s boiler-plate labeling of its decision as based on a 'lack of jurisdiction,’ " id. at *2 n. 4.

. Compare Dotson v. Griesa, 398 F.3d 156, 179-82 (2d Cir.2005), and Lombardi v. Small Bus. Admin., 889 F.2d 959, 961-62 (10th Cir. 1989), with Mitchum v. Hurt, 73 F.3d 30, 35-36 (3d Cir. 1996), and Hubbard v. EPA, 809 F.2d 1, 11 & n. 15 (D.C.Cir.1986), vacated in part on other grounds, Spagnola v. Mathis, 859 F.2d 223 (D.C.Cir.1988) (en banc) (per curiam). The Supreme Court has not resolved the question. Whitman, 547 U.S. at 513-14, 126 S.Ct. 2014.

. This self-denying ordinance, distinguishing this subset of constitutional challenges from all others, is widely repeated in the case law, e.g., Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), although it is "not mandatory,” Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994).