Edward BROUGHTON,
Plaintiff–Appellee,

v.

Russell A. COURTNEY, Donald A.
D'Lugos, Defendants–Appellants.

No. 87–3300.

United States Court of Appeals,
Eleventh Circuit.

Dec. 8, 1988.

**640**

Robert W. Merkle, Michael P. Finney, Asst. U.S. Atty., Pensacola, Fla., Richard A. Olderman, Dept. of Justice, Washington, D.C., for defendants-appellants.

Jeffrey L. Sakas, Atlanta, Ga., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and ZLOCH *, District Judge.

JOHNSON, Circuit Judge:

This case arises on appeal from the denial of defendants' motions for summary judgment on state law claims for malicious interference with employment and conspiracy to interfere with employment. Defendants, two federal employees at the Naval Air Rework Facility in Pensacola, Florida, assert that absolute immunity insulates them from these claims. Defendants further assert that the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 91 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.A.) ("CSRA"), preempts these

* Honorable William J. Zloch, U.S. District Judge for the Southern District of Florida, sitting by designation.

actions. We agree that the CSRA preempts these claims. Consequently, we reverse.

## I. FACTS

Plaintiff was a civilian employee of the Navy at the Naval Air Rework Facility in Pensacola, Florida. In 1980, plaintiff was promoted to the position of Preservation Package Foreman. Between 1980 and 1982, three disciplinary actions were taken against plaintiff for failure to follow orders. On April 16, 1982, plaintiff, claiming safety hazards, failed to follow the order of appellant Courtney to remove a number of transmissions or gear boxes from their containers. Plaintiff then refused to obey the order of appellant D'Lugos to report to the office of the General Foreman until D'Lugos reduced that order to writing. As a result, plaintiff was demoted from his position as foreman for insubordination.

Plaintiff appealed his demotion to the Merit System Protection Board's ("MSPB") regional office pursuant to the procedures established by the CSRA. See 5 U.S.C.A. § 7513(d) ("An employee against whom an action is taken under this section is entitled to appeal to the Merit System Protection Board under Section 7701 of this title."). The regional MSPB held a hearing and concluded that plaintiff's demotion was reasonable and justified. The decision of the regional office was affirmed by the Washington MSPB, and plaintiff failed to seek judicial review. See 5 U.S.C.A. § 7703(b)(1) (providing for review by the Federal Circuit Court of Appeals). Plaintiff subsequently filed a claim with the EEOC alleging racial discrimination. The EEOC found no evidence to support the charge. Plaintiff then brought suit in federal district court under Title VII, alleging racial discrimination. That suit was dismissed for lack of jurisdiction.

Plaintiff filed the present action in Florida state court, claiming that defendants tortiously interfered with his employment

and that defendants engaged in a conspiracy to interfere with his employment in violation of Florida law. Specifically, plaintiff alleges that defendant D'Lugos recommended another person for a job for which he was applying and prohibited typists from assisting him in the preparation of reports. Plaintiff alleges that both defendants required him to do additional work without providing him sufficient manpower, spied on him, accused him of insubordination, proposed restructuring the work force to place him under defendant Courtney's supervision, and replaced him in his old position. Plaintiff seeks reinstatement, back pay, and punitive damages.

■ Defendants removed the case to federal court pursuant to 28 U.S.C.A. §§ 1442(a)(1) and 1446. After discovery, defendants moved to dismiss the suit and, in the alternative, for summary judgment. The district court denied both motions, and defendants appealed.[1]

## II. DISCUSSION

■ We first address whether the CSRA preempts these claims. Federal law can preempt state law in several ways: Congress may expressly preempt state law; the federal scheme may be sufficiently comprehensive to make reasonable the presumption that Congress intended to "leave no room" for state law; or state law may conflict with federal law. *California Federal Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (discussing preemptive effect of Title VII on state law). State law may conflict directly with federal law, such that compliance with both state and federal law is impossible, or state law may create an obstacle to the attainment of federal policy

goals.[2] *Id.* Courts rely on Congress's intent in determining whether a federal statute preempts state law. *Id.* The presumption is against preemption. *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981).

In the present case, defendants argue that the CSRA preempts these state common law actions for conspiracy and for tortious interference with employment. Defendants argue that the CSRA creates a comprehensive scheme which does not permit the continued existence of parallel state tort claims. Defendants further argue that this state law action conflicts with Congress's intent to unify challenges to federal personnel decisions in one federal administrative scheme. We agree that adjudication of these state law claims under the facts of this case would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum.

Prior to the enactment of the CSRA, federal civil service employment disputes were resolved under a complex arrangement of statutory and regulatory provisions. *See* S.Rep. No. 969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2725 ("The civil service system is an outdated patchwork of statutes and rules built up over almost a century."). Congress intended the CSRA to ensure that personnel decisions involving federal civil service employees are based on merit. *See* 5 U.S.C.A. § 2301(b) (outlining the merit principles). The MSPB is the agency charged with protecting these merit principles. *See* 5 U.S.C.A. § 1205 (outlining powers and functions of the MSPB); S.Rep. No. 969, 95th Cong., 2d.Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.

1. This Court has jurisdiction to review the denial of a summary judgment motion brought under claims of absolute immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (denial of summary judgment based on immunity is an appealable final order within the meaning of 28 U.S.C.A. § 1291). Appellants assert that the district court's ruling on preemption is appealable as an issue pendant to the absolute immunity claim. Plaintiff does not challenge this assertion. The same facts are needed to decide both claims.

To avoid finding these claims preempted after a full jury trial, we will consider the preemption issue.

2. A precondition to preemption on conflict grounds is that the state law must implicate a "uniquely federal interest." *Boyle v. United Technologies Corp.,* —— U.S. ——, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Potential civil liability of federal officials is a uniquely federal interest. *Id.,* 108 S.Ct. at 2514.

News 2728–29 (MSPB is responsible for safeguarding merit principles in practice); *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (MSPB is the primary body for resolving federal personnel disputes). To ensure consistent enforcement and interpretation of these principles, Congress intended to establish a uniform system for review of federal personnel actions in the MSPB. *See United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 675, 98 L.Ed.2d 630 (1988); *see generally* S.Rep. No. 969, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723 *et seq.* The purpose behind this statutory framework is to allow the development of a unified civil service review system to replace the patchwork system that had existed prior to 1978. *Fausto,* 108 S.Ct. at 674.

The CSRA addresses a wide range of personnel practices. *See* 5 U.S.C.A. § 2302(a)(2)(A) (listing personnel practices). These practices are prohibited by the CSRA if taken for one of the reasons enumerated in 5 U.S.C.A. § 2302(b). If a federal employee is adversely affected by a prohibited personnel practice,[3] the employee can appeal the personnel action to the MSPB under 5 U.S.C.A. § 7701. Most Board decisions are appealable to the Federal Circuit Court of Appeals under 5 U.S.C.A. § 7703(b)(1). This is the procedure that the plaintiff in this case followed in challenging his demotion, although he chose to forego his opportunity for judicial review.

The question we must address is whether the CSRA preempts this state common law tort action. The CSRA does preempt challenges to personnel actions brought under federal law. *See, e.g., Fausto,* 108 S.Ct. at 674–75 (comprehensiveness of CSRA prevented review of certain personnel actions

in Claims Court under Back Pay Act). In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court declined to recognize a federal common law right to recover damages in a civil action taken for unconstitutional actions in federal employment decisions because Congress in the CSRA had provided the exclusive remedy for challenging personnel decisions. The Court refused to recognize a private cause of action for damages in this situation.[4] Similarly, in *Hallock v. Moses,* 731 F.2d 754 (11th Cir.1984), this Court refused to create a federal common law remedy for violations of First Amendment rights occurring in the federal employment context. The Court held that the aggrieved employee had to follow the remedial procedures of the CSRA.

The district court in this case relied on the fact that the Supreme Court's decision in *Bush v. Lucas* involved judicial restraint. In *Bush,* the Supreme Court exercised its discretion in declining to recognize a private cause of action for First Amendment claims in the federal employment context. The district court held that because the common law is self-executing, the court did not have the discretion to deny its application. The fact that a federal court may not have the discretion to refuse to apply state common law, however, does not mean that Congress did not intend to preempt that law.

It is clear that where state law creates an obstacle to the attainment of federal policy goals, that law is preempted. *California Federal Sav. and Loan Ass'n,* 107 S.Ct. at 689; *see also Fidelity Federal Sav. and Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982) (discussing preemp-

---

**3.** The employee must work in a covered position as defined by 5 U.S.C.A. § 2302(a)(2)(B), in an executive agency as defined by 5 U.S.C.A. § 2302(a)(2)(C), before the employee has access to the MSPB. There is no dispute that the plaintiff in this case worked in a covered position in an agency included in 5 U.S.C.A. § 2302(a)(2)(C).

**4.** In other situations, the Court has recognized a private cause of action against federal officials for damages caused by violations of constitu-

tional rights. In *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court recognized a private cause of action for damages for violations of the Fourth Amendment. That has been extended to the due process clause of the Fifth Amendment, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and to the Eighth Amendment. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

tive effect of regulations promulgated by federal agency pursuant to federal statute); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir.1987) ("Preemption is required if the assertion of a state law claim would contravene the structure and purpose of a federal statute."). Here, Congress intended the CSRA to provide an exclusive procedure for challenging federal personnel decisions. The issue for preemption purposes is whether this state common law action interferes with the attainment of that goal under the facts of this case.

The Ninth Circuit has held that where state common law claims are included in the personnel actions that employees can challenge under the CSRA, those state actions are preempted. *David v. United States,* 820 F.2d 1038, 1043 (9th Cir.1987) (CSRA allows no alternative state common law remedy); *Lehman v. Morrissey,* 779 F.2d 526, 526–27 & n. 1 (9th Cir.1985) (per curiam) (same). In light of Congress's policy to unify challenges to federal personnel actions, we adopt the approach taken by the Ninth Circuit in *David* and *Lehman.* If plaintiff's state law claims in this action are within the scope of the coverage of the CSRA, then the actions are preempted by the CSRA.

In *David* and *Lehman,* the employees could have challenged the personnel actions under the CSRA. Plaintiff in this case asserts that he would not have been able to present his conspiracy claim before the MSPB. We note that 5 U.S.C.A. § 2302(b) seems to allow a plaintiff to assert claims of bad faith in challenging a personnel action. Even if the plaintiff in this case could not have raised this claim, however, it would not disturb our conclusion. *See Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir.1987) (the fact that giving preemptive effect to a federal statute would leave an individual without a remedy does not mean that Congress did not intend to preempt state law). If adjudication of these state law claims obstructs the attainment of Congress's policy goal of unifying personnel challenges, then the claims are preempted.

The actions plaintiff challenges include recommending certain applicants for employment positions, assigning work, disciplining employees, and restructuring the workforce. Under 5 U.S.C.A. § 2302(a)(2)(A), personnel actions covered by the CSRA include appointments, promotions, disciplinary actions, transfers or reassignments, performance evaluations, and significant changes in duties and responsibilities inconsistent with the employee's job. The actions challenged in this case thus are personnel actions within the meaning of the CSRA.

Plaintiff's claims of tortious interference with employment involve willful obstruction of his work performance and granting unauthorized preference to the employee who eventually replaced plaintiff. Plaintiff's conspiracy action includes claims of bad faith or malevolent intent on the part of Courtney and D'Lugos. Under 5 U.S.C.A. § 2302(b), it is a prohibited employment practice to deceive or willfully obstruct any person with respect to that person's right to compete for employment, to influence any person to withdraw from competition for the purpose of improving or injuring the prospects of any other person for employment, or to grant any preference not authorized by law, rule, or regulation to any employee or applicant for employment. 5 U.S.C.A. § 2302(b)(4), (5), and (6). Plaintiff's claims are thus included among 5 U.S.C.A. § 2302(b)'s prohibited employment practices.

Plaintiff asserts that the Court in *Bush* created an exception to the comprehensiveness of the CSRA for intentional torts. The Court did state that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme." *Bush,* 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28. This exception does not apply in the present case, however. As indicated, the specific actions challenged in this case *are* defined as personnel actions in 5 U.S.C.A. § 2302(a). The prohibited personnel actions defined in 5 U.S.C.A. § 2302(b) include a variety of actions otherwise characterized as torts un-

der state law. The fact that these are intentional torts does not mean that they are not included in 5 U.S.C.A. § 2302(b). As the Senate Report made clear, "A prohibited personnel practice is a personnel action which is taken for a prohibited purpose." S.Rep. No. 969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 2742. Plaintiff's characterization of his claims as conspiracy and intentional interference with employment claims does not alter our conclusion that the claims are included within the scope of 5 U.S.C.A. § 2302(b).

Finally, defendants are among that class of federal employees whose personnel decisions may be challenged under the CSRA. Plaintiff conceded at oral argument that defendant Courtney acted as his supervisor. It was undisputed that defendant D'Lugos was plaintiff's supervisor. These actions were then taken by an "employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C.A. § 2302(b).

In this case, the personnel actions challenged are included in 5 U.S.C.A. § 2302(a)(2)(A); the challenges are among those challenges included in 5 U.S.C.A. § 2302(b)(4), (5), and (6); and the defendants are members of the class of federal officials covered by 5 U.S.C.A. § 2302(b). This action, then, clearly falls within the scope of the CSRA. In light of the congressional policy to unify challenges to federal personnel actions, we hold these state law claims are preempted by the CSRA.

We emphasize that we do not decide whether the CSRA preempts all state common law actions for tortious interference with employment by federal employees. We merely decide that where, as here, an employee challenges personnel actions within the scope of the Act's coverage under state law, those challenges are preempted by the CSRA.

### III. CONCLUSION

Because we hold that these state common law claims are preempted by the Civil Service Reform Act of 1978, we need not address appellants' claims of absolute im-

munity. The judgment of the district court is REVERSED, and the case is REMANDED to the district court to grant defendants' motions for summary judgment.