[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11583
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 8, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-03579-CV-RWS-1

SARAH E. HENDRIX,

Plaintiff-Appellant,

versus

JOHN SNOW, Secretary of the
Department of the Treasury of
the United States of America,
UNITED STATES OF AMERICA,
WANDA EDMUNDSON,
MICHAEL MCBRIDE,
JOHN BUTKOVICH, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 8, 2006)**

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Sarah E. Hendrix appeals pro se[1] the district court's order granting summary judgment to her former employer, John W. Snow, the Secretary of the Department of the Treasury ("Secretary"), and six current or former employees of the Department of the Treasury, including Wanda Edmundson, Michael McBride, John Butkovich, William Zachery, Ty Ayres, and Richard Byrd ("individual defendants"), on her claims of employment discrimination based on race and sex, under 42 U.S.C. § 2000e-2(a) ("Title VII"); and retaliation, under 42 U.S.C. § 2000e-3; violations of the Whistleblower Protection Act ("WPA"), under 5 U.S.C. § 1221; conspiracy to interfere with official duties, under 42 U.S.C. § 1985(1);[2] and state-law claims of intentional infliction of emotional distress. For the reasons set forth more fully below, we affirm.

In November 1997, Hendrix, a white female who was employed by the Internal Revenue Service ("IRS") as a Revenue Officer, filed a counseled civil complaint, naming the Secretary as the sole defendant. Hendrix alleged in her complaint that, soon after she was transferred from the Manhattan District to the

---

[1] Although Hendrix proceeded with various counsel in the district court, she terminated her last counsel's services prior to filing this appeal.

[2] Section 1985(1) specifically proscribes conspiracies that interfere with the performance of official duties by federal officers. See Kush v. Rutledge, 460 U.S. 719, 724, 103 S.Ct. 1483, 1486-87, 75 L.Ed.2d 413 (1983).

2

Georgia District in 1994, and continuing until her termination from this employment in January 1998, her employer harassed and discriminated against her because of her race and sex. Hendrix also contended that she was retaliated against for making complaints and was wrongfully suspended in July 1996.

In June and July 1998, Hendrix filed (1) an unopposed motion to amend her complaint, and (2) her First Amended Complaint. Her First Amended Complaint included two additional Title VII claims, alleging that the Secretary (1) subjected her to employment discrimination on the basis of race and sex, and (2) terminated her employment in December 1997, in retaliation against her complaining about her employer's discriminatory acts, filing administrative complaints, and contacting members of Congress and the media ("Counts One and Two"). In August 2001, after receiving leave to file another amended complaint, Hendrix filed her Second Amended Complaint, adding as defendants in their individual capacities six employees of the Treasury Department, and adding a claim for violations of the WPA, because the defendants took "personnel actions" and terminated her employment because of protected disclosures that she had made ("Count Three"); a claim of conspiracy under § 1985(1) ("Count Four"); and claims of intentional infliction of emotional distress ("Count Five"). Finally, in

3

August 2004, the court granted Hendrix leave to file a "Third Amendment to Complaint," whereby she amended Count Five to allege as follows:

> Plaintiff has complied with the Federal Tort Claims Act, 28 U.S.C. § 2675(a), by filing all appropriate administrative claims regarding the offending activities of the Defendants. Plaintiff has exhausted those administrative remedies available to her.

The United States Attorney for the Northern District of Georgia ("U.S. Attorney") subsequently issued a certification that each of the defendants sued in their individual capacities was acting within the scope of his or her employment with the Department of the Treasury, the Treasury Inspector General for Tax Administration ("TIGTA"), or the IRS, at the time he or she allegedly committed the acts or omissions alleged in Hendrix's Third Amended Complaint. The U.S. Attorney also filed with this certification notice of the substitution of the government for the individual defendants as to all tort claims, pursuant to 28 U.S.C. § 2679.

All of the defendants then moved for either dismissal or summary judgment. The government first argued that Hendrix's tort claims should be dismissed because, after the substitution of the government for the individual defendants, the Federal Tort Claim Act ("FTCA"), 18 U.S.C. § 2671, et seq., expressly barred tort claims against the Secretary in his official capacity. The government also contended that, although the FTCA provides for a limited waiver of sovereign

immunity against the government, this waiver was not applicable because Hendrix had failed to exhaust her administrative remedies under 28 U.S.C. § 2675, by not filing an administrative FTCA claim relating to acts or omissions attributable to TIGTA or IRS employees.

The Secretary similarly argued that he was due summary judgment on Hendrix's tort claims because the FTCA expressly bars tort claims against him in his official capacity. The Secretary contended that summary judgment was warranted on Hendrix's § 1985(1) claims because Hendrix could not show that the government had waived its sovereign immunity. The Secretary argued that Hendrix had failed to exhaust her administrative remedies for her WPA claims, as contained in the CSRA, because, once she elected to pursue her WPA claims before the Office of Special Counsel ("OSC"), and the OSC denied her claims, she was required to, but did not, seek review of this denial by the Merit System Protection Board ("MSPB"). The Secretary further contended that Hendrix's Title VII claims, other than her claims relating to her suspension, were barred by her failure to timely exhaust her administrative remedies. Additionally, the Secretary asserted that summary judgment was warranted as to Hendrix's Title VII claims relating to her suspension because (1) Hendrix had failed to identify another employee outside of her protected class who had been disciplined differently for

5

engaging in the same conduct;[3] and (2) her suspension was proposed before she engaged in any protected activities.

Similarly, the individual defendants moved for summary judgment, arguing that Hendrix's WPA claims were due to be dismissed because, among other things, Hendrix had failed to exhaust her administrative remedies by appealing her claims to the MSPB.[4] The individual defendants contended that summary judgment was warranted on Hendrix's § 1985(1) claims because, as statutory claims against federal employees that arose out of Hendrix's federal employment, they were preempted by the CSRA. Alternatively, the individual defendants argued that the § 1985(1) claims were time barred because Hendrix did not seek to add them until January 2001, more than two years after her termination in January 1998—the most recent act Hendrix attributed to the defendants.

---

[3] This conduct included Hendrix's (1) twice taking home case files home in violation of a directive to keep them in the office; (2) refusing to turn over her case files after management went to her residence to retrieve them; and (3) stating in front of a co-worker that "either I'm going to kill her or she's going to kill me."

[4] Congress created the MSPB in 1978 as part of the Civil Service Reform Act ("CSRA"). See 5 U.S.C. § 1201 et seq.. The CSRA provides for review of most personnel actions taken by a federal agency against an "employee," see 5 U.S.C. § 7551 (defining employee), and affords employees aggrieved by an adverse employment action a right to seek judicial review of decisions of the MSPB, see 5 U.S.C. § 7703(a)(1). "MSPB review of adverse employment actions was designed to protect federal employees from widespread politically motivated terminations whenever the party in power changed hands." See Chappell v. Chao, 388 F.3d 1373, 1375 n.1 (11th Cir. 2004).

In support of the defendants' arguments that Hendrix failed to exhaust her administrative remedies relating to her claims under Title VII and the WPA, they submitted the following evidence. In a formal complaint, which Hendrix filed with the IRS's Equal Employment Office ("EEO") on August 5, 1996, she identified 18 issues, which the EEO grouped into 6 claims: (1) in January 1994, when she transferred to the Georgia District, she did not receive a promised position as an International Examiner ("IE"); (2) in April 1994, she was not advised that she could have been subject to criminal prosecution for providing false information regarding financial obligations; (3) in April 1995, she was denied selection for an IE position; (4) from September 1995 until April 1996, she was subject to various instances of harassment; (5) on January 30, 1996, she was given a poor annual evaluation; and (6) in July 1996, she was wrongfully suspended ("EEO-1").

On January 15, 1997, the EEO issued a final agency decision, notifying Hendrix that it was dismissing her first five claims as untimely because she had failed to seek counseling within 45 days of the alleged acts. As part of this notice, the EEO also informed Hendrix that (1) the decision constituted the final decision by the Department of the Treasury on the dismissed portions of the complaint, (2) Hendrix either could file a civil action in the district court within 30 days or file an appeal with the MSPB, and (3) Hendrix could not appeal to the Equal

Employment Opportunity Commission ("EEOC"). Nevertheless, Hendrix filed an appeal of this final agency decision with the EEOC, which the EEOC dismissed on October 30, 1997, for improper venue.

On August 14, 1997, while Hendrix's appeal from EEO-1 was pending, she filed a complaint with the Office of the Special Counsel ("OSC"), alleging that the defendants had violated the WPA by issuing her a 60-day opportunity letter—informing her that she had to improve her performance within 60 days to avoid the termination of her employment—in retaliation against disclosures she had made in a letter to "Mr. Cowan" on May 6, 1997. Hendrix also subsequently alleged that the defendants violated the WPA by placing her on paid leave, effective October 9, 1997, during the time period she had for responding to a notice of her proposed termination. On November 17, 1997, the OSC issued a decision, whereby it (1) declined review of Hendrix's Title VII claims because Hendrix already had filed an EEO complaint, and (2) determined that Hendrix had failed to state a WPA violation.

On July 24, 1997, Hendrix filed a second EEO complaint ("EEO-2"), which the EEO dismissed on August 27, 1997, based on its determination that the claims she was attempting to raise already had been raised in another proceeding. Furthermore, on March 4, 1998, Hendrix filed a third EEO complaint ("EEO-3")

8

with the IRS Office, alleging that the termination of her employment in January 1998, was wrongful. As discussed above, Hendrix filed an amended civil complaint in the district court, adding this wrongful discharge claim, on June 25, 1998, less than 120 days after filing her EEO-3 complaint.

The Clerk of the Court then issued notices to Hendrix, advising her to respond to these summary judgment motions. Hendrix opposed these motions, arguing that summary judgment should not be granted for her claims against the government because (1) the government should not be substituted for the individual defendants, who remained liable in their individual capacities under the FTCA; and (2) she had exhausted her administrative remedies by filing three EEO complaints. Hendrix also contended that summary judgment was not warranted for her claims against the Secretary and the individual defendants because (1) the government should not be substituted for the Secretary and the individual defendants; (2) she had a remedy against the Secretary and the individual defendants in their individual capacities under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971);[5] (3) she had a private right of action, created by a 1998 amendment to

_____

[5] In Bivens, the Supreme Court held that plaintiffs may bring a cause of action for money damages against federal officers in their individual capacities based on a violation of a constitutional right. See Bivens, 403 U.S. at 395-97, 91 S.Ct. at 2004-05.

9

26 U.S.C. § 7804, through which she could raise a § 1985(1) claim; (4) she exhausted her administrative remedies for her WPA claims by submitting "mixed case" EEO complaints; and (5) unidentified disputed issues of fact existed as to her Title VII claims against the Secretary.

Afer Hendrix also filed separate objections to the U.S. Attorney's scope-of-employment certifications, the district court conducted an evidentiary hearing. The court subsequently granted the defendants' motions for dismissal and/or summary judgment as to all of Hendrix's claims. The court first determined that, because Hendrix had satisfied the exhaustion requirements for her Title VII claims relating only to her 15-day suspension, her remaining Title VII claims should be dismissed.[6] The court also determined that Hendrix's Title VII claims relating to her suspension should be dismissed based on her failure to establish a prima facie case because she (1) failed to identify a similarly situated employee outside of her protected class who engaged in similar misconduct, but who received more favorable treatment; (2) failed to cite to evidence showing that the suspension was discriminatory; and (3) conceded in her response to the defendants' statement of

_____

[6] In concluding that Hendrix had failed to exhaust her administrative remedies as to the majority of her Title VII claims, the court explained that Hendrix (1) neither filed an action in the district court within 30 days, nor appealed to the MSPB, the EEO's decision that all of her claims in EEO-1, except those relating to her suspension, were untimely; and (2) filed her first amended complaint, adding her wrongful-termination claim, less than 120 days after raising this claim in EEO-3.

material facts that she "had not filed any EEO complaints at the time of the 15-day suspension."

The court next granted the defendants summary judgment on Hendrix's WPA claims, concluding that Hendrix had failed to exhaust her administrative remedies for these claims because, although Hendrix's EEO complaints might be considered "mixed case[s,]" (1) Hendrix had failed to raise her WPA claims in any of her EEO complaints; (2) her claims in the instant case, nevertheless, would have been untimely; and (3) she failed to appeal to the MSPB the OSC's decision dismissing her WPA claims. The court also granted summary judgment on Hendrix's § 1985(1) conspiracy claim against the individual defendants, explaining that, because this claim arose out of the federal employment relationship, the CSRA was her exclusive remedy. Additionally, the court explained that, to the extent Hendrix was contending that she could maintain an action against the individual defendants, pursuant to Bivens, we had rejected this argument.

Finally, the court determined that summary judgment was warranted as to Hendrix's tort claims. The court explained that, because the individual defendants' alleged tortious acts involved acts and decisions they made relating to Hendrix's employment with the IRS, including employee discipline, participating in investigations of employee wrongdoing, and decision-making regarding training

11

and promotions, Hendrix had failed to establish that these were committed outside the scope of the individual defendants' federal employment, even if the acts were intentional or malicious.[7] The court, therefore, concluded that the U.S. Attorney's scope-of-employment certifications were proper, and it ordered the substitution of the government for the individual defendants as to Hendrix's tort claims. After the substitution of the government, the court also concluded these claims were preempted by the CSRA because they involved prohibited personnel actions as contemplated by 5 U.S.C. § 2302.

As a preliminary matter, because the defendants filed their motions as alternative motions to dismiss or for summary judgment, we must determine how to construe them. "Once the court considers matters outside the complaint, the Rule 12(b)(6) motion to dismiss converts into a motion for summary judgment." Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). A district court, however, in converting a motion to dismiss into

---

[7] Clarifying that it was not discussing each of the alleged tortious acts that Hendrix had identified, the court explained that it had reviewed each of the acts individually and determined that Hendrix both had failed to identify a tortious act committed by each individual defendant and not shown that any of the individual defendants were acting outside the scope of their employment. The court also specifically explained that: (1) to the extent Hendrix was arguing that the acts involved conduct that could subject the defendants to discipline or termination by the IRS, she was merely disagreeing with decisions made; (2) Hendrix had failed to name as a defendant the person responsible for selecting the employee to file the IE position; and (3) even if her immediate supervisor's frequent reviews of her work and orders for her to leave files in the office were intended to induce Hendrix to quit her job, these were all job-related decisions.

12

a motion for summary judgment, generally "must notify the parties and allow the parties ten days to submit relevant evidence and arguments in support or opposition to the merits." Id.

Here, before granting the defendants' motions for summary judgment, the clerk of the court issued three orders, notifying Hendrix that, after the 20-day period she had to respond had elapsed, the court intended to take the defendants' motions for summary judgment under advisement and that Hendrix's response had to show a triable issue through affidavits or other materials. Regardless, even if this notification was not sufficient to convert the pleading into a summary judgment motion, Hendrix has not contended, and the record does not reflect, that, following this notice, Hendrix was unaware of the court's intent and, otherwise, would have presented additional materials. See Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1268-69 (11th Cir. 2002) (concluding that plaintiff's response to the court's notice, as well as the plaintiff's attachments to its response to the dispositive motion and its failure to show that it otherwise would have proffered additional evidence, rendered the case sufficiently "unique," such that it constituted an exception to the Rule 56(c) notice requirement). Because the court in this case cited to the parties' pleadings, evidentiary submissions, and legal arguments, and because the record reflects that Hendrix had notice of the court's intent and her

13

burden of response, the defendants' dispositive motions will be reviewed as motions for summary judgment.

A court's order granting summary judgment is reviewed de novo, "view[ing] all evidence and all factual inferences therefrom in the light most favorable to the non-moving party." Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. at 1259 (quotation omitted).

**Issue 1:** **Title VII claims**

Hendrix generally argues that the district court erroneously granted the defendants summary judgment on the merits of her Title VII claims when disputed issues of fact existed. Without directly challenging the district court's conclusions concerning her failure to timely exhaust her administrative remedies, Hendrix also argues for the first time on appeal that, pursuant to the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the court should have construed her claims as stating a claim of continuing hostile work environment, such that, if her claim relating to her temporary suspension was timely, all of her claims were timely. Additionally,

14

Hendrix asserts that the court erred in dismissing her Title VII claims based on her suspension because she "was suspended for 15 days on a trumped up charge that she somehow threatened Appellee Edmundson's life."

To the extent the district court dismissed the majority of Hendrix's Title VII claims based on her failure to exhaust her administrative remedies, "[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action." See Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999) (citing Brown v. General Servs. Admin., 425 U.S. 820, 832-33, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976)). A federal employee who alleges both discrimination in violation of Title VII and "adverse employment actions" affecting federal civil servants, that is, a "mixed case," may choose between filing a "mixed case complaint" with her agency's EEO office, or filing a "mixed case appeal" directly with the MSPB. 29 C.F.R. § 1614.302(b). She may not file under both, however. Id. The relevant agency EEO office and the MSPB can and must address both the discrimination claims and the appealable personnel actions. Id.

A federal employee who chooses to assert her "mixed case complaint" against the government through her agency's EEO office, as Hendrix did, must undergo a two-step process to exhaust her administrative remedies: (1) informal

counseling with an EEO counselor within 45 days of the challenged employment act, and (2) the filing of a formal complaint with the agency or department within 15 days after the EEO counselor has issued a notice of final interview. 29 C.F.R. §§ 1614.105 and 1614.106. Moreover, in a "mixed case complaint," a federal employee may not file a civil suit in the district court until 120 days after she filed her formal complaint with the employing agency. 5 U.S.C. § 7702(e)(1)(A).

In the instant case, Hendrix initially contacted an EEO counselor on June 6, 1996, and she filed her first formal "mixed case" EEO complaint, that is, EEO-1, on August 5, 1996, raising 18 issues, which the IRS's EEO office grouped into six discrete claims. On January 15, 1997, the EEO properly issued a decision, notifying Hendrix that it was dismissing all of Hendrix's claims, other than her claims relating to her suspension on July 1996, because they occurred more than 45 days before she initiated her complaint and, thus, were untimely. Moreover, the EEO advised Hendrix that she either could file a civil action in the district court within 30 days or appeal the decision to the MSPB. Because Hendrix failed to take either of these measures and, instead, appealed to the EEOC, the district court did not err in concluding that she failed to exhaust her administrative remedies as to these claims. See 29 C.F.R. § 1614.302(b).

16

As discussed above, Hendrix also contacted an EEO counselor concerning her discharge on January 11, 1998, and filed a third formal EEO complaint, that is, EEO-3, on March 4, 1998. Because Hendrix's discharge occurred in January 1998, her filing of EEO-3 was timely. See 29 C.F.R. §§ 1614.105 and 1614.106. However, by adding this claim in her amended complaint on June 25, 1998, less than 120 days after she filed EEO-3, she failed to first exhaust her administrative remedies. See 5 U.S.C. § 7702(e)(1)(A). Thus, the district court also did not err in concluding that summary judgment was warranted as to Hendrix's discharge claim.

Indeed, Hendrix is not challenging directly the district court's findings applying these rules of exhaustion. Instead, Hendrix is arguing for the first time on appeal that the court should have construed her claims as a claim of hostile work environment, such that all of her claims were timely. We, however, normally will not consider a legal issue or theory raised for the first time on appeal. See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1168-69 (11th Cir. 2004). Moreover, although this general rule is not jurisdictional, and we may choose to hear newly-raised arguments under "special circumstances," Hendrix has not alleged that any of these circumstances are applicable to her case. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004) (listing the following five "special circumstances": (1) the issue involves a

17

pure question of law, where the court's refusal to consider it would result in a miscarriage of justice; (2) the appellant had no opportunity to raise an objection in the district court; (3) interests of substantial justice are at stake; (4) the proper resolution of the issue is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern). Hendrix also has not provided any basis for her failure to raise this issue in the district court, where she was represented by counsel.

Finally, to the extent Hendrix generally is arguing that the district court erred in granting summary judgment as to her claims of disparate treatment and retaliation relating to her suspension, Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also is unlawful under Title VII for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII]." 42 U.S.C. § 2000e-3(a).

Where direct evidence of discrimination or retaliation is unavailable—as was the case here—a plaintiff may present circumstantial evidence of discrimination sufficient to create a jury question. Silvera v. Orange County School Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (Title VII disparate treatment); Sullivan v. National Railroad Passenger Corp., 170 F.3d 1056, 1059-60 (11th Cir. 1999) (Title VII retaliation). For claims based on circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Silvera, 244 F.3d at 1258. If the plaintiff is successful, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Id. The plaintiff then may attempt to demonstrate that the proffered reason was, in fact, merely pretext for the defendant's acts. Id.[8] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

"A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th

---

[8] The Supreme Court set out this three-part burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

19

Cir. 2004). To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated in all relevant respects." Id. at 1091 (quotation omitted). Indeed, the comparator employee "must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Id. (citing Silvera, 244 F.3d at 1259). Because Hendrix failed to identify in her amended complaint or her response to the Secretary's summary judgment motion a comparator employee, much less explain why the employee was similarly situated, the court did not err in concluding that she failed to establish a prima facie case of disparate treatment.

To the extent Hendrix also was attempting to establish a prima facie case of Title VII retaliation, a successful plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. See Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004), cert. denied, 126 S.Ct. 478 (2005). As the district court discussed, Hendrix conceded, and the record reflects, that she had not filed any EEO complaints prior to her June 1996 suspension. Moreover, Hendrix has failed to identify any other statutorily protected expression. Thus, the district court also did not err in concluding that Hendrix failed to establish a prima facie case of Title VII retaliation. We,

20

therefore, conclude that the district court properly granted the Secretary's motion for summary judgment on all of Hendrix's Title VII claims.

**Issue 2:**     **Claims under the Whistleblower Protection Act**

Hendrix argues that the court erred in concluding that she did not exhaust her administrative remedies as to her WPA claims because she made a good-faith attempt to exhaust them by submitting a claim to the OSC. Hendrix also contends that, due to her previous filing of an EEO complaint, she reasonably believed that she could not seek review before the MSPB.

The WPA provides protection to federal employees against agency reprisal for whistleblowing activities, such as disclosing illegal conduct, gross mismanagement, gross waste of funds, or acts presenting substantial dangers to health and safety. See 5 U.S.C. § 2302(b)(8).   To the extent Hendrix's brief can be construed as arguing that the district court erred in dismissing her WPA claims based on its determination that the CSRA provides the exclusive remedy for those claims, the district court, in fact, correctly explained that the WPA was an amendment to, and, thus, a part of the CSRA, and it considered her WPA claims under the procedural framework of the CSRA, see Broughton v. Courtney, 861 F.2d 639, 643 (11th Cir. 1988) (the CSRA provides the exclusive procedure for challenging federal personnel decisions).  Indeed, although we have not previously

21

directly addressed this issue, the D.C. Circuit has concluded that, "[u]nder no circumstances does the WPA grant the district court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." See Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002).

Under the CSRA, after a federal employee alleging a WPA violation files her claim with the OSC, the OSC investigates and may petition the MSPB on the employee's behalf if the OSC finds a violation. 5 U.S.C. §§ 1214(a)(3), 1221. If the OSC finds no violation, the employee, herself, may seek review before the MSPB. Id. The decision of the MSPB then is appealable to the Federal Circuit. 5 U.S.C. § 7703. However, as discussed in Issue 1, if the employee raises a "mixed case claim," that is, one alleging both WPA and Title VII claims, the employee may seek relief either by filing a complaint with the agency's EEO department, or by appealing directly to the MSPB. 5 U.S.C. § 7702.

Here, Hendrix failed to include in any of her EEO complaints what disclosures she made that she now contends were protected under the WPA. See Willis v. Dep't of Agriculture, 141 F.3d 1139, 1144 (Fed. Cir. 1998) (explaining as persuasive authority that an employee failed to exhaust his administrative remedies when he failed to set forth the disclosures he believed were protected). Thus, to exhaust her administrative remedies, Hendrix was required to seek review of the

22

OSC's decision before the MSPB. See 5 U.S.C. §§ 1214(a)(3), 1221. Because the OSC issued a decision dismissing Hendrix's WPA claims, and because Hendrix did not seek review of this decision with the MSPB, the district court correctly determined that she failed to exhaust her administrative remedies. Cf. Kelliher v. Veneman, 313 F.3d 1270, 1274 (11th Cir. 2002) (concluding that district court had jurisdiction to review a "mixed case claim" where the employee had exhausted his claims before the MSPB).

Furthermore, to the extent Hendrix is arguing for the first time on appeal that the district court should have equitably tolled these exhaustion requirements because she was confused by notices she received based on her concurrent filings with the EEO, we decline to review this legal argument for the first time on appeal. See Four Seasons Hotels, 377 F.3d at 1168-69. Regardless, even if we were to conclude that principles of equitable tolling were applicable to relieve Hendrix from her failure to exhaust her WPA claims, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that the prerequisite of timely contacting an EEO counselor is subject to waiver, estoppel, and equitable tolling), Hendrix has failed to explain why, despite any misunderstandings she might have had based on notices she received regarding her concurrent filings of EEO complaints, she attempted, but could not discover, the

23

proper method for exhausting her remedies. Thus, she failed to show she was entitled to this remedy. The district court, therefore, also did not err in granting the defendants summary judgment as to Hendrix's WPA claims.

**Issue 3:** __Section 1985(1) claim__

Hendrix argues that the district court erred in concluding that her § 1985(1) claim was preempted by the CSRA. Relying on the fact that 26 U.S.C. § 7804 was amended in 1998, she argues that she now has a right of action and that this right of action is in addition to her rights under Title VII and the WPA.

As the district court discussed in its order granting summary judgment, the CSRA protects federal civil servants "by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." Bush v. Lucas, 462 U.S. 367, 385, 103 S.Ct. 2404, 2415, 76 L.Ed.2d 648 (1983). The CSRA, thus, overhauled the civil service system and created a new framework for evaluating adverse employment actions against federal employees. United States v. Fausto, 484 U.S. 439, 443, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988).

Therefore, outside of Title VII claims, both the Supreme Court and this Court have concluded generally that the CSRA provides the exclusive procedure

24

for challenging federal personnel decisions.  Fausto, 484 U.S. at 443, 454-55, 108 S.Ct. at 671, 677 (holding that the comprehensive nature of the CSRA precludes relief under the Back Pay Act, even though the employee was not entitled to judicial review under the CSRA); Broughton, 861 F.2d at 643 (explaining that "Congress intended the CSRA to provide an exclusive procedure for challenging federal personnel decisions").  Similarly, in Bush, the Supreme Court refused to allow a federal employee to maintain, under the First Amendment, a Bivens actions against the agency for which he worked.  Bush, 462 U.S. at 388-90, 103 S.Ct. at 2417.

In Stephens v. Dep't of Health and Human Services, 901 F.2d 1571 (11th Cir. 1990), we examined whether the CSRA provided the exclusive remedy for a federal employee who was challenging alleged prohibited personnel practices through a Bivens action.  See id. at 1572.  Rejecting the employee's argument that, because the CSRA does not state that it is exclusive, we should not restrict judicial review, we determined that the CSRA was the plaintiff's exclusive remedy.  See id. at 1575-76.  We explained that, although a Bivens action is available where a plaintiff has no alternative means of obtaining redress and there are no "special factors counseling hesitation," we have not created additional Bivens remedies "when the design of a [g]overnment program suggests that Congress has provided

25

what it considers to be adequate remedies for constitutional violations that may occur in the course of the program's administrations." See id. at 1577 (quotations and marks omitted); see also Lee v. Hughes, 145 F.3d 1272, 1273-74, 1277 (11th Cir. 1998) (holding that federal officer, who was excluded from CSRA review, could not bring, under the Fifth Amendment, a Bivens action); Hardison v. Cohen, 375 F.3d 1262, 1265-66 (11th Cir. 2004) (holding that medical resident of Department of Veteran Affairs could not bring a Bivens action for damages for wrongful discharge).

Although a review of our caselaw has not revealed authority directly addressing whether a federal employee may challenge personnel decisions through a § 1985(1) claim, the Fourth Circuit in Hall v. Clinton, 235 F.3d 202 (4th Cir. 2000), determined, as persuasive authority, that a federal officer could not challenge what was essentially personnel decisions through civil actions brought under § 1985(1). See id. at 206. In reaching this conclusion, the Fourth Circuit recognized that the Supreme Court's holding in Bush, which dealt with the effect of the CSRA on the judicial implications of constitutional remedies, was distinguishable from the foreclosure of statutory claims. See id. Nevertheless, the Hall Court determined that "Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal

employment relationship." See id. Applying this reasoning, as well as our analogous reasoning in denying Bivens claims relating to personnel problems, we conclude that the court did not err in determining that Hendrix's § 1985(1) claim challenging her employer's personnel decisions was preempted by the CSRA.

Furthermore, to the extent Hendrix is arguing that the court should have concluded that she had a private right of action, based on a 1998 amendment to 26 U.S.C. § 7804, this argument is without merit. Congress passed Public L.No. 105-206, 112 Stat. 685 (1998), § 1203(a), codified as a note to 26 U.S.C. § 7804, to authorize the Commissioner of the IRS to terminate any IRS employee for cause on charges of misconduct "if there is a final administrative or judicial determination that [the] employee [among other things, violated the federal constitutional rights of a taxpayer] in the performance of the employee's official duties." Id., § 1203(a). "Any determination of the Commissioner of Internal Revenue under this subsection may not be appealed in any administrative or judicial proceeding." Id., § 1203(c)(3). Hendrix, however, has failed to cite authority in support of her claim that this section created a private right of action. Indeed, because § 1203(c)(3) bars judicial review of actions taken under it, and given the statute's express non-delegable grant of discretion to the Commissioner of the IRS, Hendrix arguably would lack standing to bring a claim for relief under

27

it even if she could show that Congress had create a right of action under it. See id.

Moreover, as the defendants assert, Hendrix's last contested act, that is, her termination, occurred in January 1998, and Hendrix has failed to cite to authority showing that Congress intended for this statute be retroactively applicable. Thus, the district court did not err in granting the defendants summary judgment as to Hendrix's § 1985(1) claim.[9]

**Issue 4:    Tort claims**

Hendrix argues that the district court erred by misapplying the standard of review applicable to summary judgment motions in reviewing the U.S. Attorney's scope-of-employment certification. Hendrix also specifically contends that the court erred by (1) holding a hearing to determine whether the individual defendants' acts were within the scope of their employment, and (2) restricting her testimony during that hearing to the period of time after the acts at issue occurred. Hendrix argues that the court's ultimate determination was erroneous because the alleged acts were intentionally taken and fell outside the scope of the individual

---

[9] Alternatively, we could affirm based on the fact that the defendants correctly argued in response to summary judgment that Hendrix's addition of her § 1985(1) claim in August 2001, was more than two years after her employment with the IRS was terminated in January 1998, and, thus, untimely. See Walker v. Mortham, 158 F.3d 1177, 1193 (11th Cir. 1998) (explaining that we "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted, or rejected by the district court"); Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996) (holding that Georgia's two-year personal-injury limitations period applies to § 1985 claims).

28

defendants' employment.  Finally, Hendrix contends that the court erred in concluding that, after the government was substituted for the individual defendants, her tort claims against the government were preempted by the CSRA.

The remedy provided by the FTCA, as amended by the Westfall Act, to a plaintiff for an injury arising from acts of a federal employee who was acting within the scope of his employment, is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim."  28 U.S.C. § 2679(d)(1).  Thus, upon the U.S. Attorney's certification of scope-of-employment, the action "shall be deemed an action against the United States . . ., and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(2).  However, both the Supreme Court and this Court have determined that, upon objection by the plaintiff, the Attorney General's scope-of-employment certification is reviewable by the district court.  See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 436-37, 115 S.Ct. 2227, 2237, 132 L.Ed.2d 375 (1995); S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir. 1990).  Indeed, we concluded in S.J. & W. Ranch that, because  the district court's review of the issue of scope of employment is de novo, remand was necessary for the district court to conduct an evidentiary hearing.  See S.J. & W. Ranch, 913 F.2d at 1543-44.

In conducting this <u>de novo</u> review, "[t]he question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of the case at bar." <u>Bennett v. United States</u>, 102 F.3d 486, 489 (11th Cir. 1996). "The burden of altering the status quo by proving that the employee acted outside the scope of employment is . . . on the plaintiff." <u>Flohr v. Mackovjak</u>, 84 F.3d 386, 390 (11th Cir. 1996) (quotation and marks omitted). Moreover, "[t]he question of whether an employee's conduct was within the scope of his employment is governed by the law of the state where the incident occurred." <u>Id.</u>

Under Georgia law, the law applicable in the instant action, "[e]very person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." O.C.G.A. § 51-2-2. An employer is liable for negligent or intentional torts committed by an employee only if the torts were committed in furtherance of, and within the scope of, the employer's business. <u>Piedmont Hospital, Inc. v. Palladino</u>, 580 S.E.2d 215, 217 (Ga. 2003). Indeed, an employer may not be held liable for the wilful or malicious acts of an employee if these acts were not in the course of his employment and within its scope, and the

30

fact that the employee had some personal motive is immaterial.  Andrews v.

Norvell, 15 S.E.2d 808, 810-11 (Ga. Ct. App. 1941).

On the other hand, an employer cannot be held liable on the basis of

respondeat superior if the employee's acts (1) were committed for purely personal

reasons associated solely with the employee's own gratification, and (2) were

entirely disconnected from the scope of the employee's employment.  Piedmont

Hospital, 580 S.E.2d at 217.  The Georgia Supreme Court concluded in Piedmont

Hospital that the hospital was not vicariously liable under the theory of respondeat

superior to a patient for a hospital employee's alleged misconduct in manipulating

the patient's genitals during the patient's hospital stay because (1) these acts were

committed for purely personal reasons associated solely with the employee's own

gratification, and (2) were entirely disconnected from the scope of the employee's

employment with the hospital.  Id.

Applying this law in the instant case, the district court properly conducted a

de novo evidentiary hearing after Hendrix objected to the Attorney General's

certifications of scope-of-employment.  See Gutierrez, 515 U.S. at 436-37, 115

S.Ct. at 2237; S.J. & W. Ranch, 913 F.2d at 1543.  During this hearing, Hendrix

contended that the individual defendants: (1) made defamatory statements to an

Assistant U.S. Attorney, for the purpose of having Hendrix criminally prosecuted;

31

(2) improperly used an alternative ranking system to deny Hendrix a position as an IE; (3) improperly gave favorable tax treatment to persons in exchange for negative letters relating to Hendrix; (4) retaliated against Hendrix by changing her employment records and interfering with investigations; (5) misled a U.S. Senate oversight committee and prematurely ended an investigation; (6) harassed her after she was reassigned to another group within the IRS; (7) attempted to have her fired by placing her in situations where she would improperly disclose taxpayer information; and (8) continued to harass her after her employment with the IRS terminated.

As the district court determined, however, these alleged tortious acts, unlike the facts in  Piedmont Hospital, involved personnel decisions and acts Hendrix's supervisors took in furtherance of, and within the scope of, the IRS's business.  See Piedmont Hospital, 580 S.E.2d at 217.  Thus, even assuming as true Hendrix's contention that at least some of the individual defendants acted maliciously, the acts were committed within the scope of the defendant's employment and the defendant's intent was immaterial.  See Andrews, 15 S.E.2d at 810.

Finally, after substituting the government for the individual defendants, the district court properly concluded that summary judgment was warranted as to Hendrix's tort claims against the government.  As discussed in Issue 3, outside of

32

Title VII claims, the CSRA provides the exclusive procedure for challenging federal personnel decisions. See Fausto, 484 U.S. at 454-55, 108 S.Ct. at 677; Broughton, 861 F.2d at 643. Indeed, in Broughton, we examined a federal employee's state tort law claims alleging malicious interference with employment and conspiracy to interfere with employment, and determined that it fell within the scope of prohibited personnel practice as addressed in 5 U.S.C. § 2302(b), and concluded, therefore, that it was preempted by the CSRA. See Broughton, 861 F.2d at 640-44. Because the alleged tortious acts Hendrix identified during the evidentiary hearing are all prohibited under the CSRA, these acts, similar to those alleged in Broughton, were preempted by the CSRA. See 5 U.S.C. § 2302(b)(1)(A) (prohibiting personnel- practice discrimination in violation of Title VII); 5 U.S.C. § 2302(b)(2) (prohibiting the solicitation of any recommendation or statement with respect to an individual who is under consideration for a personnel action except as specifically provided); 5 U.S.C. § 2302(b)(4) (prohibiting willful obstruction of any person with respect to that person's right to compete for employment); 5 U.S.C. § 2302(b)(8) (prohibiting retaliation for protected disclosures of information). Thus, the district court also did not err in granting the defendants summary judgment on Hendrix's tort claims.

Accordingly, we conclude that the district court properly granted summary judgment as to all of Hendrix's claims in her Third Amended Complaint. We, therefore, affirm.

**AFFIRMED.**